IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| LINDA ROBINSON, individually and as executor of the Estate of ANDREW E. TAYLOR | : | CIVIL ACTION |
| | : | No. 25-4511 |
| v. | : | |
| COMPU-LINK CORP. | : | |

**MEMORANDUM**

**Judge Juan R. Sánchez** **August 21, 2026**

This action arises from the foreclosure of a Philadelphia home subject to a U.S. Department of Housing and Urban Development (HUD) insured mortgage. Plaintiff Linda Robinson brings this action individually and as executor of the estate of her father (Estate), Andrew E. Taylor, alleging Defendant Compu-Link Corp. sent a misleading pre-foreclosure notice while attempting to collect the mortgage debt. The Amended Complaint asserts claims under the Fair Debt Collection Practices Act (FDCPA) (Count I), 15 U.S.C. § 1692 et seq., the Pennsylvania Unfair Trade Practices and Consumer Protection Law (UTPCPL) (Count II), 73 Pa. Stat. Ann. § 201-1 et seq., and the Pennsylvania Fair Credit Extension Uniformity Act (FCEUA) (Count III), 73 Pa. Stat. Ann. § 2270 et seq. Compu-Link moves to dismiss under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), arguing Robinson lacks standing because the challenged notice was addressed to the Estate before she became its executor, and the pleadings otherwise fail to state a claim.

The motion will be granted in part and denied in part. Because Robinson may pursue the FDCPA claim in both her individual and representative capacities and because she plausibly alleges that claim, the motion will be denied as to Count I. Because Robinson cannot bring the UTPCPL and FCEUA claims in her individual capacity, the motion will be granted insofar as

Robinson brings Counts II and III in that capacity. The motion will be denied insofar as Robinson brings Counts II and III in her capacity as executor.

**BACKGROUND**[1]

Andrew Taylor owned residential property at 1544 East Walnut Lane in Philadelphia (the Property). Am. Compl. ¶ 6. In 2011, Andrew Taylor obtained a HUD-insured home equity conversion mortgage (HECM), commonly known as a "reverse mortgage," secured by the Property. *Id.* ¶ 7. The mortgage was later assigned to the Secretary of HUD. *Id.* ¶ 8.

Mr. Taylor died in 2022. *Id.* ¶ 9. His will named his daughter, Linda Robinson, as executor of his estate and specifically devised the Property and its contents to her. *Id.* ¶ 10. Robinson alleges she had lived at the Property since at least 2010 and acquired title to it upon Taylor's death. *Id.* ¶¶ 11–12. Taylor's death rendered the mortgage loan due and payable. *Id.* ¶ 13.

HUD retained Compu-Link, a mortgage servicer, "around December 2022" to collect the debt. *Id.* ¶ 14. On March 14, 2024, Compu-Link mailed a "Notice of Intent to Foreclose and Accelerate Mortgage Balance" to the Property addressed to the "Estate of Andrew J. Taylor." *Id.* ¶ 16. The notice claimed the mortgage was in default and demanded payment of $238,342.01 within thirty days to cure the default. *Id.* It further stated that, if the default was not cured, Compu-Link intended to "instruct [its] attorneys to start a lawsuit to foreclose" the Property, after which the Property would be "sold by the Sheriff to pay off the mortgage debt." Pl.'s Ex. A, Dkt. No. 7-1 at 3. The notice also stated, "[w]e may also sue you personally for the unpaid balance and all other sums due under the mortgage," and represented that the default could be cured until "one hour before a Sheriff's foreclosure sale." *Id.*

[1] The following facts are taken from the Amended Complaint and accepted as true at this stage. The Amended Complaint appears to be misnumbered prior to the "Factual Allegations" section. The Court only cites to the "Factual Allegations" section and succeeding sections.

Robinson asserts these statements were materially misleading. First, she alleges HUD requirements permitted Taylor's heirs to preserve the Property by paying 95% of its appraised value or the full balance of the loan, whichever is less, but the notice instead demanded payment of the entire loan balance. Am. Compl. ¶¶ 18–20. The Property was later appraised at $155,000. *Id.* ¶ 36. Second, Robinson alleges Compu-Link represented that HUD would proceed through a judicial mortgage foreclosure and sheriff's sale even though Compu-Link knew HUD would instead use "an alternative non-judicial" foreclosure procedure. *Id.* ¶¶ 22, 24. Third, she alleges the HECM was "non-recourse" and therefore Compu-Link could not lawfully seek personal liability against Taylor, his Estate, or his heirs. *Id.* ¶ 23.

On April 5, 2024, Robinson obtained letters testamentary for the Estate and was formally appointed executor. *Id.* ¶ 26. She then sought legal advice, engaged a mortgage adviser, and commissioned an appraisal while attempting to obtain financing to preserve the Property. *Id.* ¶¶ 27–37. She alleges the demand for more than $238,000, rather than 95% of the Property's substantially lower appraised value, impeded her efforts to obtain financing. *Id.* ¶¶ 25, 37.

On July 31, 2024, HUD's foreclosure commissioner, KML Law Group, recorded and mailed to the Property a "NOTICE OF DEFAULT AND FORECLOSURE SALE" providing for a nonjudicial sale. *Id.* ¶¶ 38–39. Robinson received the notice in August 2024 and discussed it with counsel. *Id.* ¶ 40. According to the Amended Complaint, counsel checked the court and sheriff's records and found no judicial foreclosure action or scheduled sheriff's sale. *Id.* Robinson, pursuant to the advice of counsel, went to the Philadelphia Sheriff's office and was told the Property was not scheduled for Sheriff's sale. *Id.* ¶¶ 40–41.

The Property was nevertheless sold to HUD through a nonjudicial process on September 17, 2024, for $195,034.99. *Id.* ¶ 42. A deed to HUD was later recorded, and no Sheriff's sale

occurred. *Id.* ¶¶ 43–44. Robinson claims Compu-Link's earlier statements caused her to lose the opportunity to preserve the Property and caused economic and emotional injuries, including expenses associated with probate and the appraisal. *Id.* ¶¶ 46–52.

The Amended Complaint asserts three counts. Count I alleges violations of the FDCPA, 15 U.S.C. § 1692e(2), (5), and (10). Count II alleges violations of the UTPCPL, 73 Pa. Stat. Ann. § 201-1 et seq. Count III alleges violations of the FCEUA, 73 Pa. Stat. Ann. § 2270 et seq., based on the alleged FDCPA violations. Compu-Link moves to dismiss all three counts with prejudice.

**STANDARD OF REVIEW**

A Rule 12(b)(1) motion challenging "the sufficiency" of jurisdictional allegations is evaluated under substantially the same standard governing a Rule 12(b)(6) motion. *In re Schering Plough Corp. Intron/Temodar Consumer Class Action*, 678 F.3d 235, 243 (3d Cir. 2012); *Finkelman v. Nat'l Football League*, 810 F.3d 187, 194 (3d Cir. 2016).

To withstand a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation and quotation marks omitted). A claim is facially plausible when the facts pleaded permit a "reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

A court reviewing a Rule 12(b)(6) motion separates factual allegations from legal conclusions, accepts well-pleaded facts as true, draws reasonable inferences in the plaintiff's favor, and then determines whether those facts plausibly establish an entitlement to relief. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210–11 (3d Cir. 2009); *Oakwood Lab'ys LLC v. Thanoo*, 999 F.3d 892, 904 (3d Cir. 2021). The Court may consider the complaint, exhibits attached to it, matters

of public record, and documents integral to or explicitly relied on in the complaint. *Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014).

**DISCUSSION**

Compu-Link first argues Robinson lacks standing because the March 14, 2024 notice was addressed to the Estate and Robinson had not yet been formally appointed executor of the Estate. Def.'s Mot. 6–15, Dkt. No. 9-1. That argument implicates both constitutional standing and standing to bring claims under the asserted statutes.

Robinson adequately alleges constitutional standing. To establish constitutional standing, a plaintiff "must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). Robinson alleges a concrete economic injury, including expenses incurred in responding to the March 14, 2024 notice and the loss of an ownership interest in the Property. She further alleges those injuries resulted from Compu-Link's allegedly misleading representations and may be redressed through an award of damages. Those allegations are sufficient to establish injury, traceability, and redressability at the pleading stage.

Compu-Link's remaining argument depends on whether Robinson has a cause of action under the FDCPA and UTPCPL.[2] *See Branche v. Wells Fargo Home Mortg., Inc.*, 624 F. App'x 61, 64 (3d Cir. 2015) (citing *Hunt v. U.S. Tobacco Co.*, 538 F.3d 217, 221, 224 (3d Cir. 2008)). The Court therefore addresses Compu-Link's statutory arguments under Rule 12(b)(6).

The FDCPA prohibits a debt collector from using a "false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e. Among other things, § 1692e prohibits false representations concerning "the character, amount, or legal

[2] The FCEUA claim here is derivative of both the FDCPA and UTPCPL claims.

status of any debt," threats to "take any action that cannot legally be taken or that is not intended to be taken," and "deceptive means" used to collect a debt. §§ 1692e(2), (5), (10). The FDCPA's civil liability provision allows suit by "any person" harmed by a violation. 15 U.S.C. § 1692k(a). Furthermore, "[b]ecause the FDCPA is a remedial statute, [courts] construe its language broadly, so as to effect its purpose." *Brown v. Card Serv. Ctr.*, 464 F.3d 450, 453 (3d Cir. 2006) (citations omitted).

Compu-Link argues Robinson cannot sue under the FDCPA because she was not a "consumer" when the March 2024 notice was sent. Def.'s Mot. 15–16. But, as § 1692k(a) states, not every provision of the FDCPA limits recovery to a "consumer." Section 1692(k) imposes civil liability when a debt collector fails to comply with the FDCPA "with respect to any person." 15 U.S.C. § 1692k(a); *see also Wenrich v. Robert E. Cole, P.C.*, No. 00-2588, 2001 WL 4994, at *3 (E.D. Pa. Dec. 22, 2000) ("Federal courts interpret Section 1692k(a) as a broad grant available to persons who are not obligated or allegedly obligated to pay the debt that the defendant sought to collect."). Consistent with that language, courts have distinguished FDCPA provisions expressly limited to communications with a "consumer" from § 1692e provisions that are broader. *See Cole v. Toll*, No. 07-0590, 2007 WL 4105382, at *5–7 (E.D. Pa. Nov. 16, 2007).

That distinction does not mean every person who learns of an improper collection communication may sue. When a plaintiff is not personally obligated on the debt, the challenged collection activity ordinarily must have been "directed at that [plaintiff]" or otherwise have subjected the plaintiff to the allegedly prohibited practice. *Id.* at *7; *Nobile v. U.S. Bank Nat'l Ass'n*, No. 15-1973, 2016 WL 639116, at *5 (M.D. Pa. Jan. 15, 2016), report and recommendation adopted, 2016 WL 627761 (M.D. Pa. Feb. 17, 2016); *see also Sibersky v. Goldstein*, 155 F. App'x 10, 12 (2d Cir. 2005) (concluding that "a person other than the debt consumer or someone standing

in the consumer's shoes," would "have to plead some injurious exposure to the communication to have standing to sue").

Robinson's FDCPA claim is permitted to the extent she brings it solely in her individual capacity. While the March 2024 notice was addressed to the Estate and did not identify Robinson or state that she individually owed the debt, her status as heir and occupant of the Property gave her a substantial interest in the foreclosure. The allegations permit a reasonable inference that Robinson personally received, reviewed, and acted in response to the notice. She sought advice, retained a mortgage adviser, commissioned an appraisal, and sought financing based on the representations in the notice.

Robinson is now the duly appointed representative authorized to prosecute claims belonging to the Estate. "Under Federal Rule of Civil Procedure 17(b)(3), 'capacity to sue is determined by the law of the state where the court is located.'" *Hall v. Nationstar Mortg., LLC*, 255 F. Supp. 3d 625, 635 (E.D. Pa. 2015) (quoting *Est. of Bayliss v. Wells Fargo Bank N.A.*, No. 08-2966, 2008 WL 4792446, at *2 (E.D. Pa. Oct. 30, 2008)). Pennsylvania Rule of Civil Procedure 2002 allows a "plaintiff acting in a representative capacity to sue in her own name—if she discloses that capacity in the caption and in her initial pleading."[3] *Id.* (citation modified); Pa. R. Civ. P. 2002(b)(1). The fact that Robinson received her formal appointment weeks after the challenged communication does not eliminate a cause of action belonging to the Estate. Robinson may therefore pursue Count I individually and, as executor, on behalf of the Estate.

The Amended Complaint also plausibly alleges a violation of FDCPA. Most clearly, Robinson alleges the HECM expressly precluded personal liability and a deficiency judgment, yet

---

[3] Federal Rule of Civil Procedure 17(a)(1)(A) also permits an executor to sue in her own name "without joining the person for whose benefit the action is brought."

Compu-Link told the Estate, "[w]e may also sue you personally for the unpaid balance and all other sums due under the mortgage." Dkt. No. 7-1 at 3. Compu-Link now acknowledges that a reverse mortgage is nonrecourse, *see* Def.'s Mot. Reply 1 n.1, meaning it could not seek personal liability against Taylor, his Estate, or his heirs. Accepting the allegations as true, a statement that the Estate could be sued personally for a debt enforceable only against the Property plausibly misrepresented the legal character of the debt and threatened action that could not legally be taken. *See* 15 U.S.C. §§ 1692e(2), (5), (10).

Robinson's remaining theories—that Compu-Link misleadingly demanded the entire loan balance without disclosing an alleged right to preserve the Property for 95% of its appraised value and that Compu-Link's references to a judicial foreclosure and Sheriff's sale were deceptive because it allegedly knew HUD would instead use nonjudicial foreclosure—cannot be resolved against her at the pleading stage.

The Amended Complaint alleges the applicable HECM rules permitted the Property to be transferred for 95% of its appraised value before foreclosure sale and that Compu-Link nevertheless represented that more than $238,000 was required to prevent foreclosure. Compu-Link asserts the 95% of appraised value option expired in 2023 and that HUD sent a letter to the Estate explaining this in October 2022. *See* Def.'s Mot. 3 n.6, 5 n.10. Whether that letter established expiration of the option and whether the applicable HECM requirements operated as Compu-Link contends present issues the Court need not resolve. The alleged threat of personal liability independently states a plausible FDCPA claim.

The judicial foreclosure allegations likewise present a factual issue concerning what Compu-Link knew and intended when it sent the March 2024 notice. A statement concerning a legally available collection action can still be misleading if the collector represents that action will

be taken while knowing it will not be. *See Brown*, 464 F.3d at 455 ("[W]e conclude that it would be deceptive under the FDCPA for [the defendant] to assert that it could take an action that it had no intention of taking and has never or very rarely taken before."). Robinson claims Compu-Link knew the Property would proceed through the nonjudicial process even as it told the Estate that attorneys would file a foreclosure lawsuit and the Property would be sold by the Sheriff. The subsequent July 31, 2024 nonjudicial foreclosure notice does not eliminate the FDCPA claim. Section 1692e focuses on whether the challenged representation was false or misleading when made. *See Gomez v. Cavalry Portfolio Servs., LLC*, 962 F.3d 963 (7th Cir. 2020) (concluding that "[a] statement is false, or not, when made; there is no falsity by hindsight" in a § 1692e case) The motion will therefore be denied as to Count I because Robinson may proceed in her individual and representative capacities.

Turning to Count II, the UTPCPL creates a private cause of action for a "person who purchases or leases goods or services primarily for personal, family or household purposes and thereby suffers ascertainable loss of money or property, real or personal, as a result of" unlawful conduct proscribed by the statute. 73 Pa. Stat. Ann. § 201-9.2. A private plaintiff must allege "justifiable reliance" on the defendant's deceptive conduct. *Hunt*, 538 F.3d at 221 (3d Cir. 2008).

Robinson cannot pursue Count II in her individual capacity. The Amended Complaint alleges Taylor, not Robinson, entered the HECM transaction. Robinson does not allege she individually purchased or leased mortgage services from Compu-Link or its predecessors. In *Branche*, the Third Circuit rejected a materially similar individual UTPCPL claim because the nonborrower plaintiff had not purchased the mortgage services at issue. 624 F. App'x at 64. Although *Branche* noted "the estate may have had a claim under the UTPCPL," the court did not decide that issue because the plaintiff sued only in her individual capacity. *Id.*

Here, Robinson also sues as executor of Taylor's Estate. Taylor was the borrower and purchaser of the mortgage services, and Robinson seeks to recover on behalf of his Estate for allegedly deceptive conduct connected to those services. At the pleading stage, those allegations plausibly satisfy the UTPCPL's purchaser requirement as to the Estate.

The Amended Complaint also plausibly alleges reliance and ascertainable loss on behalf of the Estate. Robinson alleges that, relying on Compu-Link's representation of the amount required to satisfy the HECM and preserve the Property, she paid $505 to admit Taylor's will to probate and obtain letters testamentary for the Estate. Am. Compl. ¶¶ 26, 52. That expenditure plausibly constitutes an expense incurred in administering the Estate. *See* 20 Pa. Cons. Stat. § 3392(1) (stating that "costs of administration" are treated as "charges" against estate assets). Robinson further alleges that she and her son commissioned an appraisal while attempting to obtain financing based on Compu-Link's representations. Am. Compl. ¶¶ 36–37. Although the Amended Complaint does not specify who paid for the appraisal, the $505 probate expenditure alone constitutes an actual, nonspeculative monetary loss allegedly incurred in reliance on the challenged representations. *See Kaymark v. Bank of Am., N.A.*, 783 F.3d 168, 180–82 (3d Cir. 2015), *abrogated on other grounds by Obduskey v. McCarthy & Holthus LLP*, 586 U.S. 466 (2019). At the pleading stage, this is sufficient for the Estate's UTPCPL claim.

Count III alleges Compu-Link violated the FCEUA because the conduct alleged in Count I also violated the FDCPA. Pennsylvania law provides that "if a debt collector violates any of the provisions of the [FDCPA]," it constitutes an "unfair or deceptive debt collection act or practice" under the FCEUA. 73 Pa. Stat. Ann. § 2270.4(a). As discussed above, Robinson plausibly alleges Compu-Link violated the FDCPA by making false or misleading representations in its March 2024 notice.

But a substantive violation of the FCEUA does not itself create a private cause of action. Section 2270.5(a) provides that when "a debt collector or creditor engages in an unfair or deceptive debt collection practice" prohibited by the FCEUA, the conduct "shall constitute a violation of" the UTPCPL. 73 Pa. Stat. Ann. § 2270.5(a). Furthermore, the FCEUA "does not provide its own private cause of action; rather it is enforced through the remedial provision of the UTPCPL." *Kaymark*, 783 F.3d at 182. Thus, because "the FCEUA can only be enforced to the extent the UTPCPL's private remedy is invoked," a plaintiff who cannot state a claim for relief through the UTPCPL cannot obtain relief under the FCEUA. *Id.* Robinson cannot invoke the UTPCPL's private remedy in her individual capacity because she did not purchase or lease the mortgage services at issue. She therefore cannot pursue an individual FCEUA claim, even though she plausibly alleges conduct prohibited by the FCEUA.

The Estate stands differently. The FCEUA defines a "consumer" to include "the consumer's guardian, executor or administrator." 73 Pa. Stat. Ann. § 2270.3. And, as explained in addressing Count II, Robinson plausibly alleges in her representative capacity that Taylor purchased the mortgage services and that the Estate suffered an ascertainable loss resulting from reliance on Compu-Link's allegedly deceptive representations. The Estate may therefore invoke the UTPCPL's private remedy to enforce the alleged FCEUA violation. Because the conduct alleged in Count I plausibly violates the FDCPA and therefore constitutes an unfair or deceptive debt collection practice under § 2270.4(a), Count III may proceed insofar as Robinson asserts it as executor of the Estate. The Court will therefore dismiss Count III insofar as Robinson asserts it in her individual capacity but will deny the motion insofar as she asserts Count III as executor of the Estate.

The Court will dismiss Robinson's individual capacity claims in Counts II and III with prejudice because amendment would be futile. *Montanez v. Price*, 154 F.4th 127, 151 (3d Cir. 2025) (stating that leave to amend "should be liberally given unless amendment would be inequitable or futile"). Robinson has already amended once, and the defects in these claims are legal rather than factual. Taylor, not Robinson, purchased the mortgage services at issue. Robinson therefore cannot satisfy the UTPCPL's purchaser requirement in her individual capacity. Additional factual allegations concerning the same communication would not cure that defect. *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1434 (3d Cir. 1997) ("Futility means that the complaint, as amended, would fail to state a claim upon which relief could be granted." (citation modified)).

**CONCLUSION**

For the foregoing reasons, the Court will grant in part and deny in part Compu-Link's motion to dismiss. The Court will deny the motion as to Count I. The Court will dismiss Counts II and III with prejudice insofar as Robinson asserts them in her individual capacity and will deny the motion insofar as Robinson asserts those claims in her representative capacity as executor of the Estate.

An appropriate Order follows.

BY THE COURT:

/s/ Juan R. Sánchez
Juan R. Sánchez, J.